Donna **HEILWEIL**, Plaintiff–Appellant,

v.

**MOUNT SINAI HOSPITAL,**
Defendant–Appellee.

No. 1139, Docket 93–7881.

United States Court of Appeals,
Second Circuit.

Argued March 31, 1994.

Decided Aug. 17, 1994.

CARDAMONE, Circuit Judge:

Plaintiff, Donna Heilweil, appeals from a judgment of the United States District Court for the Southern District of New York (Owen, J.) entered August 5, 1993, granting defendant Mount Sinai Hospital's motion for summary judgment and dismissing plaintiff's complaint that alleged she was demoted and discharged in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–796 (Act), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e to 2000e–17 (Title VII), and common law claims alleging an unsafe work environment and breach of contract.

The issue on this appeal is whether plaintiff, an asthmatic, is a handicapped person under the Rehabilitation Act so that her employer's decision to terminate her subjects it to liability for damages. Plaintiff held the position of administrator in the blood bank of the hospital where she worked. Located in the basement of one of the hospital's buildings, that facility's ventilating system made plaintiff's asthma much worse. Her discharge came after she informed her supervisor that her doctor told her she should no longer work there. But the inability to satisfy the requirements of a particular assignment does not mean such a person is regarded as handicapped. Such inability does not constitute the necessary substantial limitation of a "major life activity" required to meet the definition of a handicapped person under the Act. To meet that definition, the employee's impairment must limit her employment generally.

## BACKGROUND

Plaintiff Donna Heilweil began working for defendant Mount Sinai Hospital (Mount Sinai or the hospital) as a Pavilion Manager in May 1987. Prior to being hired, she had been diagnosed as having asthma. Although this condition had caused her discomfort, she was able, with proper care and adjustment of her activities including regular exercise, to avoid discomfort and maintain her health. After Heilweil began working, she says she noticed a reduction in her capacity for exer-

Denny Chin, New York City (Anne L. Clark, Vladeck, Waldman, Elias & Engelhard, P.C., of counsel), for plaintiff-appellant Donna Heilweil.

Aaron J. Schindel, New York City (Seth Michael Popper, Proskauer Rose Goetz & Mendelsohn, of counsel), for defendant-appellee Mount Sinai Hosp.

Before: TIMBERS, CARDAMONE and WINTER, Circuit Judges.

cise, began to cough and wheeze, and experienced sinus headaches. Her physician believed her symptoms were primarily caused by allergic reactions to her house cats and treated her for this with some success. Six months later she was promoted to the position of Management Associate. She was given responsibility for administrating the hospital's blood bank in April 1988 on a temporary basis, and eight months later in January 1989 this assignment became permanent. As administrator of the blood bank, she was in charge of supervising a $12 million dollar budget and 50 employees. In addition, she acted as a liaison between the blood bank and the hospital administration. Except for a small amount of time spent in the hematology department, Heilweil spent most of her working day in the blood bank. The hospital never expressed any dissatisfaction with her performance. To the contrary, Heilweil states she was repeatedly told by the administration that her work was outstanding.

The blood bank contains offices, labs and patient care facilities. Because it has no windows, a forced air system provides it with ventilation. Heilweil complained to her superiors that when heating oil was delivered to the building, the ventilation system picked up the diesel fumes and circulated them into the blood bank. She also complained that natural gas fumes entered the office from an adjacent meter room, odors from soiled hospital linens emanated from a laundry chute that opened into a closet in the blood bank, and temperatures within the blood bank fluctuated widely. Plaintiff brought these matters to the attention of the hospital's Director of Institutional Safety Programs, Dr. Raymond Pfleger, and the former Medical Director of the blood bank, Dr. Greenberg. She told Dr. Greenberg that exposure to the blood bank's environment was causing her health problems.

In her complaint, plaintiff alleges that after her transfer to the blood bank her asthmatic symptoms worsened. There, she says, she began suffering physical and mental discomfort, including difficulty breathing, wheezing and coughing, respiratory infections, bronchitis, headaches, tightness in the chest, depression, and difficulty sleeping.

Heilweil's physician advised her in March 1989 that the air quality at the blood bank was an "asthmatics's nightmare," the principal cause of her ailments, and that she should stay away from that facility.

Immediately after receiving her physician's diagnosis that the blood bank was the cause of her discomfort, Heilweil discussed her health concerns with her immediate supervisor, Joel Seligman, Associate Director of the hospital. Although the parties disagree as to precisely what was said, it is undisputed that because of her physical reaction to that facility's environment, Heilweil was no longer expected to work there on a regular basis. At this meeting Seligman told her that a new Medical Director of the blood bank was coming on June 1, 1989 and asked her in the interim not to seek other employment outside or within Mount Sinai, but rather to continue in her work and to assist in the transition. She would then be allowed time to find a new job, and Seligman told her he would assist her in finding a position at Mount Sinai or another hospital. Mount Sinai agrees with Heilweil's description of what transpired between her and Seligman only adding that Seligman told her if she was unable to work in the blood bank, she could not hold the position of administrator of that facility on a long-term basis. For the next several months, Heilweil never entered the blood bank; as she administered it from outside. Plaintiff maintains her health rapidly improved once this change in her work routine occurred.

On June 1, 1989 the new Medical Director of the blood bank arrived. The following day, Seligman asked Heilweil if she could go to the blood bank on a regular basis to meet with him. Heilweil refused, explaining that she felt ill very shortly after going into the blood bank and that she was then pregnant and was concerned for her baby's health. It became apparent to Seligman that Heilweil could not serve in her administrator capacity and he would need to find a replacement. Later that month Seligman informed Heilweil that a person already on staff would take over the functions of blood bank administrator and that Heilweil would serve as her

assistant until sometime in August. Heilweil was discharged on August 25, 1989.

Although Seligman had asked plaintiff at the June 1989 meeting to provide him with medical documentation regarding her asthmatic condition, she never did. In fact, the first medical documents Mount Sinai received were physician's records attached to Heilweil's affidavit in opposition to Mount Sinai's motion for summary judgment. These documents were filed in November 1992, more than three years after Mount Sinai requested this information. The records indicate that after March 1991 Heilweil's medical condition deteriorated to a point requiring surgical correction and that she may have developed a condition known as bronchiectasis, a change in the lining of the lung that renders it more sensitive and susceptible to fluid infiltration and infection.

In her complaint Heilweil claimed she was demoted and discharged in violation of the Rehabilitation Act, because she was then an individual with handicaps under the Act and Mount Sinai refused to reasonably accommodate her, that her pregnant condition caused her demotion and discharge, in violation of Title VII, and that Mount Sinai failed to provide her with a safe place to work. She also alleged two breach of contract causes of action. In her prayer for relief, plaintiff sought a declaration of her rights, an injunction, reinstatement, reasonable accommodation of her impairment, compensatory and punitive damages, attorney's fees, costs and interest.

On September 28, 1992 Mount Sinai moved for summary judgment on all plaintiff's claims. Heilweil did not oppose defendant's motion on the two breach of contract actions. In a memorandum and order filed August 3, 1993, the district court granted summary judgment on her Rehabilitation Act and pregnancy discrimination causes of action, and dismissed her common law claim against the hospital for failing to provide a safe work environment, deferring to the jurisdiction of the New York Workers' Compensation Board. Judgment was entered in favor of Mount Sinai on August 5, 1993. From this grant of summary judgment plaintiff appeals.

## DISCUSSION

On appeal Heilweil raises only two issues: the dismissal of her cause of action under the Rehabilitation Act and the dismissal of her common law safe workplace cause of action. We deal with each in turn.

The district court found that in June 1989—the relevant time—Heilweil was not a handicapped person within the meaning of the Act because her respiratory problems were exacerbated only when she worked in the blood bank and thus her medical condition did not substantially limit one or more of her life activities. The trial court based its conclusion on Heilweil's statement that she felt "fine now that I haven't been in the blood bank for several months" and that she had been exercising regularly. Because Judge Owen ruled that plaintiff was not a handicapped person, he did not reach or discuss the other factors needed to be shown to make out a *prima facie* case under the Act.

### I Scope of Review

Since this is an appeal from a grant of summary judgment, we apply the same standard as the district court and determine *de novo* whether a genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Taggart v. Time Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991). Only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). All inferences drawn from the facts must be construed in a light most favorable to the nonmoving party, here plaintiff Heilweil. *See Taggart*, 924 F.2d at 46. It is only when no rational jury could find in favor of the nonmoving party, that it can be said that there is no genuine issue of material fact and summary judgment properly may be granted to the moving party. *See Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

### II Burden of Proof Under the Act

We turn to the Rehabilitation Act, which provides that "[n]o otherwise qualified indi-

vidual with handicaps ... shall, solely by reason of her ... handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (1988), *subsequently amended by* Pub.L. No. 102–569, § 102(p)(32) (1992).

■ The plaintiff in a Rehabilitation Act suit bears the initial burden of establishing a *prima facie* case under the Act. The burden then shifts to the employer. If the employer asserts a neutral reason, unrelated to plaintiff's handicap, for its employment decision, then its burden is to "articulate a legitimate non-discriminatory reason for discharging the employee." *See Gallo*, 22 F.3d at 1224–25. The burden then shifts back to the plaintiff to show that the employer's stated reason is really a pretext for discrimination. *Id.* But if the employer relies on plaintiff's handicap as the reason for the adverse employment decision, then its burden is "to rebut the inference that the handicap was improperly taken into account by going forward with evidence that the handicap is relevant to qualifications for the position." *Doe v. New York Univ.*, 666 F.2d 761, 776 (2d Cir.1981). The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that she is qualified despite her handicap. *See id.* at 776–77; *see also Teahan v. Metro–North Commuter R.R.*, 951 F.2d 511, 514–15 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (describing differences in employers' burdens depending upon the asserted reason for the discharge).

### III  Plaintiff's *Prima Facie* Case

■ A plaintiff makes out a *prima facie* case of discrimination under the Act by showing: 1) she is a handicapped person under the Act; 2) she is otherwise qualified to perform her job; 3) she was discharged because of her handicap; and 4) the employer is a recipient of Federal financial assistance. *See Doe*, 666 F.2d at 774–75; *see also Bates v. Long Island R.R.*, 997 F.2d 1028, 1035 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). Defendant contends, and the district court

found, that Heilweil did not prove she is a handicapped person under the Act.

### A.  *Proof of Handicap*

■ Whether one is a handicapped person under the Act necessitates a two-pronged inquiry. It must first be determined whether a plaintiff has a physical or mental impairment. If so, it must then be decided whether such impairment substantially limits one or more of that person's major life activities. The term "individual with handicaps" is defined in the Act as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B) (1988), *subsequently amended by* Pub.L. No. 102–569, § 102(f)(2) (1992) and Pub L. No. 103–73, § 103(2)(B) (1993).

■ 1.  *Physical Impairment.* The regulations promulgated under the Act shed further light on the meaning of physical impairment and major life activity. In *School Board of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 11, 94 L.Ed.2d 307 (1987), the Supreme Court said "[i]n determining whether a particular individual is handicapped as defined by the Act, the regulations promulgated by the Department of Health and Human Services are of significant assistance ... [and] provide 'an important source of guidance on the meaning of § 504 [of the Act].'" The regulations define physical or mental impairment as "any physiological disorder or condition ... affecting [the] ... respiratory [system]." 45 C.F.R. § 84.3(j)(2)(i)(A) (1989); *see also* 28 C.F.R. § 41.31(b)(1)(i) (1989) (same). Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii) (1989); *see also* 28 C.F.R. § 41.31(b)(2) (1989) (same). Because the Act is a remedial statute, it and the regulations promulgated under it are to be construed broadly. *See Gilbert v. Frank*, 949 F.2d 637, 641 (2d Cir. 1991).

Heilweil insists she meets both prongs of the inquiry. She certainly satisfies the first

prong. Plaintiff has suffered from asthma since 1987, before she began working at Mount Sinai. Asthma is a physiological disorder or condition that affects the respiratory system. Under the statute and applicable regulations, Heilweil suffers from a physical impairment. *See* 29 U.S.C. § 706(8)(B); 45 C.F.R. § 84.3(j)(2)(i)(A); 28 C.F.R. § 41.-31(b)(1)(i).

■ 2. *Major Life Activity.* It is on the second prong—whether plaintiff's physical condition affected a major life activity at the time the hospital discharged her—where her case founders. Under the regulations the ability to breathe and work are major life activities. *See* 45 C.F.R. § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2). We consider first whether plaintiff's ability to breathe was significantly affected by her asthmatic condition.

Heilweil contends her asthma significantly affected her day-to-day functioning. Yet in a June 12, 1989 conversation with Director of Human Resources Kruger, she stated that because she had not been in the blood bank for several months she felt "fine, now." Additionally, in plaintiff's deposition of July 12, 1990—almost a year after her discharge—she testified that her current respiratory condition did not limit her ability to exercise and that she had been swimming because she had a limited amount of time each day to exercise and swimming was a good overall workout. *See Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir.1992) (in a respiratory impairment case, evidence person participated in recreational activities undermines finding that person is handicapped under Act). Thus, it appears that at the time Mount Sinai terminated plaintiff and throughout the following year Heilweil's ability to breathe restricted her only in a limited way, and did not bar her from exercising.

We pass now to whether plaintiff's physical impairment substantially limited her ability to work. In this analysis the kinds of jobs from which the impaired individual is disqualified must be carefully considered. An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one. *See Jasany v.*

*United States Postal Serv.*, 755 F.2d 1244, 1249, n. 3 (6th Cir.1985).

Plaintiff maintains she began to experience respiratory difficulties as soon as she began working at Mount Sinai, but reported that her physician thought these problems were related to allergic reactions to her house cats and that treatment somewhat alleviated her allergic reaction. Further, as discussed above, she told the Director of Human Resources that she felt "fine" after not having been in the blood bank for several months, implying that the blood bank was causing the respiratory problem. And, as plaintiff averred in her complaint, her "health improved rapidly once she stopped physically going into the Blood Bank."

It is quite apparent that the peculiar fumes within the blood bank exacerbated plaintiff's asthma, not the general environment of the hospital. Heilweil declares that it is not just the blood bank that made her asthmatic condition worse, but rather "her disability made it impossible to work in *any* poorly-ventilated place—including Mount Sinai's blood bank." No medical proof substantiates this assertion. And, to defeat a motion for summary judgment a plaintiff cannot rely on "conjecture or surmise," *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Mount Sinai proved through plaintiff's own statements and those of her doctor that it was the conditions in the blood bank that worsened her asthmatic symptoms, leaving no genuine issue of material fact as to what caused her respiratory problems at her place of employment.

In *Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989), we stated the obvious fact that a person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working. In fact, every circuit to visit this issue has so ruled. *See Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.1994) (for plaintiff to show allergy to

tobacco smoke substantially limited ability to work, she had to show allergy foreclosed employment opportunities in her field), *cert. denied,* — U.S. —, 115 S.Ct. 59, — L.Ed.2d — (1994); *Cook v. Rhode Island,* 10 F.3d 17, 25 (1st Cir.1993) (jury could find employer regarded plaintiff's condition as substantially limiting her ability to work because her condition foreclosed a wide range of employment options within the health care field); *Byrne,* 979 F.2d at 565 (a person's inability to perform a specific job for a specific employer does not substantially limit a person's ability to work); *Welsh v. City of Tulsa,* 977 F.2d 1415, 1419 (10th Cir.1992) ("[A]n impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act."); *Maulding v. Sullivan,* 961 F.2d 694, 698 (8th Cir.1992) (plaintiff was not handicapped under the Act because sensitivity to chemicals prevented her from working only in lab and did not substantially limit employment opportunities as a whole), *cert. denied,* — U.S. —, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986) (substantial limitation on person's ability to work occurs when impairment forecloses generally "the type of employment involved").

Here plaintiff was medically restricted from working in only one place in the hospital—the blood bank. With respect to plaintiff's other employment opportunities, she stated at her deposition that Seligman had told her he would help her find another position, whether at Mount Sinai or somewhere else. From this, it appears plaintiff was willing—were such available—to accept another position at Mount Sinai. Further, when Seligman attempted to contact Memorial Sloan–Kettering Cancer Center to see if a position was available for her there, Heilweil discouraged him because she thought her chances for employment there would be better if she made the initial contact. Plaintiff did contact Memorial Sloan–Kettering, apparently thinking this would be a viable employment alternative. Nothing suggests plaintiff's education and previous job experiences would hinder her ability to find a suitable position in the general field of administration. Heilweil is a college graduate with a master's degree in business administration, who since taking her degree has always been gainfully employed.

Heilweil was not therefore a handicapped person under the Act when she was discharged. Because her asthmatic condition did not substantially limit a major life activity—either her ability to breathe or work—defendant's motion for summary judgment was properly granted.

### B. *Subsequent Medical Evidence*

■ We now turn to evidence of plaintiff's medical condition two years after she left Mount Sinai's employ. Although the proof was offered and rejected by the district court, the issue of what knowledge an employer under the Rehabilitation Act must have at the time it makes its decision was neither briefed by the parties or decided by Judge Owen. On appeal the issue has been fully briefed. We could remand to the district court for it to decide this issue in the first instance, but we see no reason to do so because there are no facts in dispute—either as to Heilweil's condition before or subsequent to her discharge when the bronchiectasis was diagnosed—and the issue to be decided is solely one of law, which we may decide ourselves.

Heilweil's medical evidence submitted with her affidavit in opposition to defendant's motion for summary judgment, as noted earlier, indicates that in 1991 she may have been suffering from something more than asthma. We do not think this later obtained medical information is probative on the issue of whether or not she was a handicapped person under the Act when in June 1989 Mount Sinai decided to discharge her. Mount Sinai was then on notice that plaintiff suffered from symptoms of an asthmatic reaction that her doctor said was caused by the conditions in the blood bank. Both Seligman and Director of Human Resources, Kenneth Kruger, requested plaintiff to submit medical verification of her condition, but she never did. Heilweil cannot therefore now complain that she was discharged based on information that she may have been suffering from a different condition at the time she was termi-

nated, when concededly neither she nor Mount Sinai was aware of it.

Heilweil contends that the district court should have considered this 1991 medical evidence as demonstrating that she had been suffering from a chronic and serious sinus condition, which eventually required surgery, and that her condition dated back to 1989. In so stating, appellant relies on decisional law for the proposition that subsequent medical evidence is probative of a Rehabilitation Act claimant's medical condition at the time her employer made the adverse employment decision. The decisional law is quite to the contrary.

Plaintiff relies first on *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir.1985). There the Ninth Circuit held it was not an abuse of discretion to refuse to consider subsequent medical evidence an employer had obtained after discharging plaintiffs. Although the court stated the evidence might be considered for the purpose of refuting plaintiff's claim that she was qualified for the position, it also concluded that "[t]he asserted basis for the employer's decision not to hire the plaintiff is limited to the evidence relied on by the employer at the time the decision was made." As a corollary, an employer is only responsible for employment decisions based on information available to it when it decides. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1181 (6th Cir.1993) (plaintiff not dismissed solely by reason of handicap because decisionmaker had no knowledge of it); *cf. Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 877 n. 6 (9th Cir.1989) ("As long as the employer is on notice that an employee suffers from a serious medical condition, it may be liable under the [Washington] handicap discrimination law."), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *O'Keefe v. Niagara Mohawk Power Corp.,* 714 F.Supp. 622, 627 (N.D.N.Y.1989) (employer did not violate New York law when it discharged plaintiff prior to becoming aware of his alcohol problem). Of course, here there was no such notice. Plaintiff's further reliance on three cases discussed earlier in her quest to convince us that the district court erred by not considering her subsequent medical evidence gives her no comfort.

In all three, no subsequent medical proof was offered to show the plaintiff was handicapped at the time of the relevant employment decision. *See Byrne,* 979 F.2d at 565; *Forrisi,* 794 F.2d at 934; *Jasany,* 755 F.2d at 1250.

## IV   Providing Plaintiff with a Safe Place to Work

In dismissing Heilweil's common law cause of action alleging that Mount Sinai breached its duty to provide a safe place to work, the district court deferred to the expertise of the New York Workers' Compensation Board because it has primary jurisdiction over the matter. Section 10 of the New York Workers' Compensation Law mandates that every employer shall provide compensation to its employees for a disability from an injury "arising out of and in the course of [their] employment." N.Y. Work. Comp. Law § 10 (McKinney 1992). "The liability of an employer ... shall be exclusive and in place of any other liability whatsoever...." *Id.* § 11. "In any proceeding for the enforcement of a claim for compensation ..., it shall be presumed in the absence of substantial evidence to the contrary ... [t]hat the claim comes within the provision of this chapter...." *Id.* § 21 (McKinney 1993).

Whether the injury "arises out of and in the course of the employment" is "one of the most important criteria for determining whether an employer is liable for a worker's disability." *Id.* § 10 Practice Commentary (McKinney 1992). Section 2 of the Law defines injury as encompassing "only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." *Id.* § 2(7) (1992). An occupational disease is defined as "a disease resulting from the nature of employment and contracted therein." *Id.* § 2(15).

In *Liss v. Trans Auto Systems, Inc.,* 68 N.Y.2d 15, 20–21, 505 N.Y.S.2d 831, 496 N.E.2d 851 (1986), the New York Court of Appeals held that the Board has primary jurisdiction regarding the availability of Workers' Compensation and plaintiff must litigate this issue before the Board. Since plaintiff's case presents a mixed question of fact and law, the Board must first decide if

there is a causal connection between the deterioration of Heilweil's asthma and the conditions in the blood bank and, if so, whether such reaction is an accidental injury or occupational disease under the statute. Plaintiff's evidence regarding her physical condition in 1991 may be relevant to the Board's consideration of causal connection.

It is of course within the Board's authority to determine whether a physical condition that later manifests itself was caused by a condition of the worker's employment, and, if so, to compensate the employee accordingly for the incurred disability. An employer's responsibilities under the Act are not so broad. Nothing in the statute, regulations, logic or the decisional law charges an employer with liability for a handicapped condition of which it had no notice when it discharged an employee. The only pertinent language to hold an employer liable is that it must act *because* of an employee's handicap. The same responsibility is not thrust on employers as is on the Board. Were it otherwise, an employer could be subject to damages long after an employee had been terminated without being afforded the ameliorative opportunity to avoid such penalty by taking steps reasonably to accommodate the now known-to-be handicapped employee.

The district court did not abuse its discretion by deferring to the Board, especially because what constitutes an occupational disease or an accidental injury under the workers' compensation law is a fine distinction best left to the expertise of the Board. *Compare Johannesen v. New York City Dep't of Hous. Preservation & Dev.*, 84 N.Y.2d 129, 133, 137, 615 N.Y.S.2d 336, 638 N.E.2d 981 (1994) (plaintiff suffered an "accidental injury" when she began suffering from bronchial asthma due to exposure to tobacco smoke and dust at work) *with Mack v. County of Rockland*, 71 N.Y.2d 1008, 1009, 530 N.Y.S.2d 98, 525 N.E.2d 744 (1988) (an aggravation of plaintiff's preexisting eye disorder by exposure to cigarette smoke in a poorly ventilated room was not an "occupational disease" under the statute). Because plaintiff chose not to litigate this issue before the Board, the district court correctly avoided ruling on the merits of her claim, referring it to the Board for its determination. *See Liss*, 68 N.Y.2d at 21, 505 N.Y.S.2d 831, 496 N.E.2d 851.

The instant case is unlike *Shine v. Duncan Petroleum Transport, Inc.*, 60 N.Y.2d 22, 26, 466 N.Y.S.2d 672, 453 N.E.2d 1089 (1983), where the trial court improperly issued a stay on the morning of jury selection when the defendant asserted the workers' compensation defense as a bar to plaintiff's civil action. *Shine* held this action to be an abuse of discretion because the defendant had known the factual and legal aspects of the case for over two years and waited until the last minute to assert its jurisdictional defense. *See id.* at 27–28, 466 N.Y.S.2d 672, 453 N.E.2d 1089. Here, Mount Sinai asserted the worker's compensation defense in its answer to plaintiff's complaint thereby alerting Heilweil that it intended to assert it and causing her no prejudice when it did.

## CONCLUSION

The district court's grant of summary judgment to Mount Sinai Hospital dismissing plaintiff's claim of discrimination under the Act is affirmed as at the time the adverse employment decision was made she was not a handicapped person under the Act. We also affirm the dismissal of plaintiff's common law cause of action for failure to provide a safe work environment as Heilweil must first litigate this latter claim before the New York Worker's Compensation Board.

Affirmed.