**Vito D'AMICO, Firefighter, Plaintiff-Appellant,**

v.

**The CITY OF NEW YORK; Joseph F. Bruno, Former Fire Commissioner; Carlos Rivera, Current Fire Commissioner, the City of New York; Thomas Dunphy, Lieut.; Matthew Murtagh, Deputy Asst. Chief; Patricia Bartels, Asst. Fire Commissioner, Defendants-Appellees.**

No. 638, Docket 97-7273.

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1997.

Decided Jan. 7, 1998.

---

**2.** We also reject plaintiffs' reliance on the minutes of the 1971 Guatemala City Conference. *See generally Floyd,* 499 U.S. at 550, 111 S.Ct. at 1501 (Guatemala City Protocol not dispositive in interpreting Warsaw Convention because the United States Senate has not ratified the Protocol, and only a few of the 120 signatories of the Warsaw Convention have adopted it.)

F.W. Meeker, Jr., Richard A. Glovin, of counsel, New York City, for Plaintiff–Appellant.

Paul A. Crotty, Corporation Counsel of the City of New York, Deborah R. Douglas, Kristen M. Helmers, of counsel, New York City, for Defendants–Appellees.

Before: KEARSE and CARDAMONE, Circuit Judges, and LEISURE, District Judge.[*]

LEISURE, District Judge:

Vito D'Amico, plaintiff in the underlying action, appeals from a judgment of the United States District Court for the Southern District of New York (Griesa, C.J.), granting defendants' motion for summary judgment and dismissing D'Amico's Complaint alleging that the defendants violated the Rehabilitation Act of 1973 when they dismissed him from his position with the Fire Department of the City of New York ("FDNY"). For the reasons stated below, the judgment of the district court is affirmed.

## BACKGROUND

D'Amico joined the FDNY in 1982. In 1987, he began to use cocaine. He started by using cocaine once per week, but by 1988, he either snorted or smoked cocaine almost daily. In April 1988, D'Amico was arrested for assault, possession of a controlled substance, and resisting arrest. Following this arrest, the FDNY referred D'Amico to counseling within the FDNY, but D'Amico did not at

that time reveal the extent of his cocaine habit to his counselor.[1]

In September 1988, the FDNY received an anonymous letter accusing D'Amico of using and selling cocaine. The FDNY ordered D'Amico to submit to a urine test on or about December 13, 1988. D'Amico tested positive for cocaine and the FDNY suspended him without pay. The FDNY lifted D'Amico's suspension in January, 1989, pending the outcome of disciplinary proceedings, reassigned him to light duty in February 1989, referred D'Amico to FDNY counseling, and arranged for him to enter an intensive outpatient drug treatment program at Smithers Alcoholism Treatment and Training Center ("Smithers").

Smithers informed the FDNY on April 7, 1989, that the facility had discharged D'Amico for failure to comply with his treatment agreement. Smithers's letter to the FDNY noted that D'Amico had engaged in "inappropriate behavior," and was absent from treatment for over a week. Smithers's internal record states that D'Amico admitted using alcohol on one occasion and cocaine on another occasion, during the course of the program. D'Amico vehemently denies using alcohol or cocaine during this period, and claims that he was drug-free from December 14, 1988, to the time of his discharge from the FDNY.

During this period, the FDNY charged D'Amico with four violations of FDNY Regulations. Charge 1 alleged that D'Amico was "absent without leave" on September 21, 1988, when he failed to report to the Bureau of Health Services. Charge 2 alleged that this absence violated his oath of office. Charge 3 alleged that on or about December 13, 1988, D'Amico used a controlled substance prohibited by New York Penal Law, in violation of the FDNY Regulations. Charge 4 alleged that the use of cocaine on or about December 13, 1988, violated an All Units Circular of the FDNY.

On March 14, 1989, the FDNY notified D'Amico that a pre-trial conference would be held on March 30 regarding the disciplinary charges. At the conference, D'Amico alleg-

* Hon. Peter K. Leisure, United States District Judge for the Southern District of New York, sitting by designation.

1. The charges stemming from this arrest were dropped on or about July 26, 1988.

edly knowingly and falsely stated that he had not been discharged from Smithers. This statement formed the basis of the fifth charge brought against him in June 1989.

D'Amico returned to Smithers and entered an inpatient drug treatment program on April 17, 1989. D'Amico successfully completed the program on May 15, 1989. Smithers then informed the FDNY of D'Amico's completion.

Administrative Law Judge Ray Fleischhacker presided over a hearing on the disciplinary charges on June 23, 1989.[2] Judge Fleischhacker found D'Amico guilty of Charges 1–4, and not guilty of Charge 5. Judge Fleischhacker recommended that the FDNY terminate D'Amico because of his cocaine use. On September 8, 1989, Fire Commissioner Joseph Bruno terminated D'Amico, effective September 5, 1989. Commissioner Bruno stated:

> In light of the grave responsibilities entrusted to a firefighter, the Respondent's continued employment with the Fire Department presents a significant risk, both to the general public and to his fellow firefighters.

D'Amico commenced this action on August 28, 1992, alleging that the FDNY violated the Rehabilitation Act of 1973 and Title 42, United States Code ("U.S.C."), Section 1983. Following discovery, Chief Judge Thomas P. Griesa granted the defendants' motion for summary judgment on all of the plaintiff's claims. *See D'Amico v. City of New York*, 955 F.Supp. 294 (S.D.N.Y.1997). D'Amico appeals the court's determinations regarding his claims under the Rehabilitation Act.

### DISCUSSION

#### I. Standard for Appellate Review

The Court of Appeals reviews a district court's grant of summary judgment *de novo*. *See Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 23 (2d Cir.1994); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994); *Taggart v. Time Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991). The Court utilizes the same standard as the district

court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful. *See, e.g., Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir.1997); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The Court must draw all inferences in favor of the non-moving party. *See Heilweil*, 32 F.3d at 721; *see also Taggart*, 924 F.2d at 46. A court may grant summary judgment only when no rational jury could find in favor of the non-moving party. *See Heilweil*, 32 F.3d at 721; *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

#### II. Burden of Proof Under the Rehabilitation Act

■ The plaintiff in a suit brought under the Rehabilitation Act bears the initial burden of establishing a *prima facie* case under the Act. *See Heilweil*, 32 F.3d at 722. The burden then shifts to the employer. In a case where the employer relies on the plaintiff's handicap as the reason for the adverse employment decision, the employer must "rebut the inference that the handicap was improperly taken into account by going forward with evidence that the handicap is relevant to qualifications for the position." *Doe v. New York Univ.*, 666 F.2d 761, 776 (2d Cir.1981); *see also Heilweil*, 32 F.3d at 722 (quoting *Doe*). The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that he is qualified for the position despite his disability. *See Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511, 515 (2d Cir.1991); *see also Heilweil*, 32 F.3d at 722.

#### III. Plaintiff's *Prima Facie* Case

■ The Rehabilitation Act, at the time of the events at issue here, provided that "[n]o

---

**2.** Pursuant to Section 15–113 of the New York City Administrative Code, hearings to determine if a firefighter has violated the FDNY Regulations are conducted by an Administrative Law Judge.

otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (1988). To establish a *prima facie* case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is an "individual with a disability," (2) he was "otherwise qualified" for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds. *See Borkowski v. Valley Centr. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir.1995); *see also Heilweil*, 32 F.3d at 722; *Doe*, 666 F.2d at 774–75.

The parties agree that D'Amico satisfies prongs (3) and (4) of the *prima facie* case; the FDNY receives federal funding and terminated D'Amico based upon his cocaine use. The parties disagree about whether D'Amico is an "individual with a disability," and whether he is "otherwise qualified" to be a firefighter.

### A. *"Individual with a Disability"*

 Substance abuse is a recognized disability for purposes of the Rehabilitation Act, and an employer may violate the Act by taking an adverse employment action against an employee who has overcome past substance abuse problems. *See Teahan*, 951 F.2d at 517, 518. The Act provides:

(i) For purposes of subchapter V of this chapter, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.

(ii) Nothing in clause (i) shall be construed to exclude as an individual with a disability an individual who –

(I) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitat-

ed successfully and is no longer engaging in such use[:]

29 U.S.C. § 706(8)(C) (1994).

 The relevant time for assessing whether a plaintiff is a "current substance abuser" is the time of discharge. *See Teahan*, 951 F.2d at 518. In the instant case, plaintiff was discharged on September 8, 1989. However, the Court does not utilize that date as a fixed snapshot, but rather as a guidepost from which to determine whether the employer acted with justification. A current substance abuser is an individual whose "substance abuse problem is severe and recent enough so that the employer is justified in believing that the employee is unable to perform the essential duties of his job." *Id.* at 520. The resolution of whether an individual's problem is severe and recent enough to classify him as a current substance abuser turns on the consideration of several factors, including: (1) the level of responsibility entrusted to the employee, (2) the employer's applicable job and performance requirements, (3) the level of competence ordinarily required to perform the task in question, and (4) the employee's past performance record. *See id.*

 The parties disagree as to the existence of D'Amico's drug use during the period between December 13, 1988, when he tested positive for cocaine, and September 8, 1989, when the FDNY terminated his employment. The FDNY claims that D'Amico admitted using alcohol and cocaine during D'Amico's first stay at Smithers, in early 1989.[3] D'Amico vehemently denies making any such statement and claims that he did not use any drugs during the time in question. Drawing all inferences in favor of D'Amico, the Court finds that an issue of material fact exists as to whether D'Amico was a current substance abuser at the time of his dismissal within the meaning of the Rehabilitation Act. As D'Amico has satisfied the prong requiring him to show that he is a disabled individual, he will have established a *prima facie* case if he also shows he is "otherwise qualified" for a position as an active firefighter.

---

**3.** Smithers discharged D'Amico on March 27, 1989.

## B. *"Otherwise Qualified"*

As D'Amico makes a *prima facie* case that he is a disabled individual, the Court must determine if he is "otherwise qualified" for a position as an active firefighter. An individual is otherwise qualified for a position if he is able to perform the essential functions of the position, with or without a reasonable accommodation. *See Borkowski,* 63 F.3d at 135. The Supreme Court defines an individual as "otherwise qualified" if he "is able to meet all of a [position's] requirements in spite of his handicap." *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (internal quotation marks omitted).

The determination of whether the employee is otherwise qualified as of the date of termination is based on a prospective comparison of the employee's ability to perform and the abilities of non-disabled individuals to perform. *See Teahan,* 951 F.2d at 521; *see also Doe,* 666 F.2d at 776. The likelihood of relapse is relevant to the determination of whether an individual is otherwise qualified, even if he is not a "current" substance abuser. *See Teahan,* 951 F.2d at 520. To evaluate whether an employee with a disability is otherwise qualified, there are a number of factors to consider. But, the inquiry essentially boils down to examining what conduct is symptomatic of the handicap, what conduct the job in question requires, and how these two interact. *See id.* at 521 ("In other words, whether conduct is job-related depends as much on the job as on the conduct."). A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position. *See Doe,* 666 F.2d at 776; *see also Taub v. Frank,* 957 F.2d 8, 10 (1st Cir.1992).

A court necessarily must consider both the type of position for which the plaintiff claims to be otherwise qualified, and the consequences of a potential mishap. In *Di-Pompo v. West Point Military Academy,* 770 F.Supp. 887, 894 (S.D.N.Y.1991), *aff'd* 960 F.2d 326 (2d Cir.1992), Judge Michael B. Mukasey cogently observed, "What may be a reasonable risk for a postal worker ... whose job generally does not pose great hazards to those who perform it or to the public they serve, is not necessarily a reasonable risk for a firefighter, whose job is defined at almost every turn by the potential for disaster to himself and others." The demands placed upon a firefighter are unique and extreme, and the job of firefighter is dangerous and difficult, even without outside variables such as cocaine use. Any lapse in judgment or alertness easily could result in injury or death to the victims of the fire, to other firefighters, and to the firefighter himself.

D'Amico's history of cocaine addiction, together with the FDNY's judgment as to the possibility of, and the risks inherent in, a relapse, justified the FDNY's decision to terminate his employment. By his own admission, D'Amico engaged in drug usage following his dismissal, which is the precise problem the FDNY feared.[4] "[W]here the issue to be decided is the likelihood that an event will occur, the fact that it did occur is perhaps the most probative evidence possible." *Hogarth v. Thornburgh,* 833 F.Supp. 1077, 1087 (S.D.N.Y.1993). D'Amico has offered no evidence to indicate that he was otherwise qualified to serve as an active firefighter, he has not sought any accommodation from the FDNY for his disability, nor does he seek to be placed in any other job within the FDNY. A plaintiff bears the initial burden of showing that he can perform the essential functions of the job with a reasonable accommodation or no accommodation. *See Borkowski,* 63 F.3d at 138; *see also Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir. 1991). "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this [he] has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." *Borkowski,* 63 F.3d at

---

**4.** D'Amico admits using cocaine in December 1989, following his completion of the Smithers program and his termination from the FDNY.

138; *see also Gilbert,* 949 F.2d at 642. As D'Amico has not suggested any accommodation, he fails to make a *prima facie* showing that one exists. D'Amico thus has not established a *prima facie* case of discrimination under the Rehabilitation Act. His claim must fail; the judgment of the district court was correct.

## CONCLUSION

For the reasons stated above, the district court's grant of the defendants' motion for summary judgment is AFFIRMED.