Rose Marie **EIDSHAHEN,** Plaintiff,

v.

**PIZZA HUT OF AMERICA, INC.,** Defendant.

**No. Civ. 396CV02513PCD.**

United States District Court, D. Connecticut.

Sept. 21, 1998.

Kathleen Eldergill, Beck & Eldergill, Manchester, CT, Drew S. Graham, Updike, Kelly & Spellacy, P.C., Hartford, CT, Rose Marie Eidshahen, plaintiff pro se, Bristol, CT, for Rose Marie Eidshahen, plaintiff.

Chase T. Rogers, Joseph Ferraro, Cummings & Lockwood, Stamford, CT, for Pizza Hut, defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff alleges that Defendant discriminated against her by refusing to rehire her because of a disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Defendant moves for summary judgment. For the following reasons, the motion is **DENIED.**

### I. BACKGROUND

The following facts are assumed, as alleged. On or about August 30, 1992, Defendant hired Plaintiff to work as a shift manager in its Torrington, Connecticut restaurant. While working in the restaurant on October 28, 1992, Plaintiff slipped on some oil, injuring her neck, back, ankle and left wrist. Because of her injuries, Plaintiff was unable to continue working for Defendant, though Defendant did not terminate her employment. In February 1993, Plaintiff underwent surgery on her wrist, which left her with visible scars.

On May 20, 1993, Plaintiff's doctor issued her a return to work release with no restrictions. Shortly thereafter, Plaintiff brought the work release to Shari Silber, manager of Defendant's Torrington restaurant, and asked to be returned to work. Ms. Silber told Plaintiff that she would have to clear Plaintiff's return to work with Defendant's Area Manager, Jan Litzburg.

In early June 1993, Plaintiff contacted Ms. Litzburg by phone and expressed her desire to return to work. Ms. Litzburg

informed Plaintiff that the shift manager position in Torrington had been filled, but that she could have a shift manager position at Defendant's Bristol, Connecticut restaurant if she could provide a letter from her doctor stating that "nothing would happen to her wrist again." Def.'s Mem.Supp.Summ.J. at 4. Later that month, Plaintiff called Ms. Litzburg to inform her that her doctor would not provide the requested assurance. Ms. Litzburg told Plaintiff that she would have to contact her Plaintiff's supervisors about the problem. Plaintiff called Ms. Litzburg at least once a week between that conversation and August 1993 to inquire about the status of her return to work, but Ms. Litzburg did not return her calls. In August 1993, Ms. Litzburg called Plaintiff and informed her that she could not return to work without a letter from her doctor stating that she would not reinjure her wrist at work.

Plaintiff was unable to secure the requested letter and never returned to work for Defendant. Neither Ms. Litzburg nor Ms. Silber offered Plaintiff a non-managerial job at Pizza Hut at any time, though several part- and full-time workers were hired at Defendant's Torrington Restaurant between May 20 and September 1, 1993. On or about December 4, 1993, Plaintiff began work as a manager for a Little Caesar's restaurant. She reinjured her left wrist while lifting a bag of flour after four or five days at Little Caesar's.

On December 12, 1996, Plaintiff filed this suit, alleging that Defendant engaged in employment discrimination against her in violation of the ADA. Defendant filed a motion for summary judgment on February 5, 1998.

## II. *DISCUSSION*

### A. *Standard of Review*

Summary judgment shall be granted when "the pleadings, depositions ... and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.

R.CIV.P. 56(c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505. A factual issue is "material" if it "might affect the outcome of the suit under the governing law...." *Id.* Once the movant has satisfied its burden, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. 2505. The non-movant may not merely rest on the allegations and denials in the pleadings but must establish, via affidavits, depositions, answers to interrogatories and admissions on file, that a genuine issue of material facts exists. *Id.* at 248, 106 S.Ct. 2505. In considering a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. Finally, courts must exercise special caution when evaluating summary judgment motions in discrimination cases where the employer's intent is at issue. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

### B. *The Americans with Disabilities Act*

The ADA states that, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A plaintiff who makes a disability discrimination claim under the ADA bears the initial burden of establishing a *prima facie* case. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996); *see Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994) (noting that Plaintiff

suing under the Rehabilitation Act must meet *prima facie* burden). The plaintiff's prima facie case includes showing: (1) that she is a disabled person as defined by the ADA, (2) that she is otherwise qualified to perform her job, and (3) that adverse employment action was taken against her because of her disability. *Wernick,* 91 F.3d at 383; *see Heilweil,* 32 F.3d at 722 (applying same test for actions under the Rehabilitation Act). Defendant contends that Plaintiff has failed to meet all three parts of her *prima facie* burden.

### 1. *"Disabled Person" under the ADA*

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff contends that the last definition of "disability" applies to her; namely, that Defendant regarded her as having a physical impairment that substantially limited her ability to work.

Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") under the ADA state that a person is "regarded as having such an impairment" if he or she:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R.Ch. XIV § 1630.2(1). Though Plaintiff asserts that she meets all three of the above definitions, she presents no evidence suggesting that anyone other than Defendant regarded her as having an impairment. Therefore, she must demonstrate that a material issue of fact exists as to whether Defendant treated her as if she had a physical or mental impairment that substantially limited a major life activity. *See Heilweil,* 32 F.3d 718, 722 (2d Cir. 1994) (applying the same requirements to plaintiff suing under the Rehabilitation Act).

█ First, the regulations define "physical or mental impairment," in pertinent part, as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: ... musculoskeletal...." 29 C.F.R.Ch. XIV § 1630.2(h)(1). The evidence clearly indicates that Defendant treated Plaintiff as if she had a "musculoskeletal condition" since it refused to reinstate her if she did not provide a letter from her doctor stating that "nothing would happen to her wrist again." Def.'s Mem.Supp.Mot.Summ.J. at 4. Further, Defendant required this letter of Plaintiff despite the fact that it had seen an unrestricted work release for Plaintiff from at least one and perhaps two of Plaintiff's doctors. Pl.'s Mem.Opp.Mot.Summ.J. at 17. Hence Defendant treated Plaintiff as if she had a physical impairment.

Second, the EEOC regulations define "major life activities" as "functions such as ... working." 29 C.F.R.Ch. XIV § 1630.2(I). Accordingly, Defendant treated Plaintiff as if she had a physical impairment that affected a major life activity by refusing to reinstate in her job because of its apparent belief that she had a wrist impairment.

Third, the EEOC regulations define "substantially limits" in the "working" context as, "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R.Ch. XIV § 1630.2(j). The regulations further state that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29

C.F.R.Ch. XIV § 1630.2(j). Hence Plaintiff must raise a material issue of fact as to whether Defendant believed her perceived wrist impairment to significantly restrict her ability not only to be a Pizza Hut manager, but to perform a "class of jobs or a broad range of jobs in various classes."

Initially, it should be noted that a wrist injury that prevents heavy lifting appears to be precisely the type of injury that might significantly restrict a person from performing a class of jobs. The EEOC regulations promulgated under the ADA provide the following example: "... an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs." 29 C.F.R.Ch. XIV § 1630.2(j), App. Like a back injury or condition that prevents heavy lifting, a wrist injury or condition that prevents heavy lifting might prevent an individual from performing the class or classes of jobs that involve heavy lifting or repetitive wrist motion.

Moreover, Plaintiff contends that not only did Defendant fail to reinstate her to her position as manager of a Pizza Hut restaurant, it also did not offer her any other job at a Pizza Hut restaurant, though several non-managerial positions were open during the relevant time period. Eidshahen Affidavit at ¶ 10. Plaintiff further asserts that she phoned Ms. Litzburg, Defendant's area manager, at least once a week for approximately three months to inquire about the status of her return to work and that those phone calls went unreturned. Id. at ¶ 16. A jury might reasonably infer that Defendant's failure to discuss other employment options with Plaintiff despite her persistent telephone calls was due to its belief that the condition of Plaintiff's wrist would significantly restrict her ability to work for Pizza Hut in any number of positions.

### 2. *Otherwise Qualified to Perform the Job*

The ADA defines a "qualified individual with a disability" as a person with a disability who "with or without reasonable accommodation, can perform the essential functions of the employment that such individual holds or desires." 42 U.S.C. § 12111(8). EEOC regulations permit an employer to require that an individual "not pose a direct threat to the health or safety of himself/herself or others." 29 C.F.R.Ch. XIV § 1630.2(r), App. To be proper a basis for denying an employment opportunity, the threat must present a high probability of substantial harm that cannot be eliminated or reduced to an acceptable level by a reasonable accommodation. 29 C.F.R.Ch. XIV § 1630.2(r), App.

■ Defendant argues that Plaintiff was not "otherwise qualified" for the position of shift manager because her continued work in that position posed the risk that she would reinjure her wrist. To support its contention, Defendant points to Plaintiff's inability to procure a note from her doctor stating that she would not reinjure her wrist in the future. However, Defendant had received at least one and possibly two unrestricted work releases for Plaintiff and apparently possessed no medical information indicating that Plaintiff was unable to resume her duties as shift manager. In short, Plaintiff provided the only medical evidence relating to her wrist, and that evidence stated without qualification that Plaintiff could return to work. Defendant fails to cite a single case in which a plaintiff provided an unrestricted work release but defendant refused to reinstate the plaintiff nevertheless. Clearly defendant considered plaintiff as having a disability and treated her accordingly. Defendant presents no evidence that a reasonable accommodation could not have satisfactorily mitigated or eliminated the alleged risk to Plaintiff's safety. Accordingly, a material issue of fact exists as to whether Plaintiff was a direct threat to her own safety

and hence unqualified for the shift manager position.

### 3. *Adverse Employment Action Taken Due to Disability*

To establish the final element of her *prima facie* burden, Plaintiff must raise a material issue of fact as to whether she was not reinstated to her position as shift manager because of her perceived disability. Defendant contends that Plaintiff was not terminated because she was perceived to be disabled, but because she failed to produce a doctor's note stating that she would not reinjure her wrist again if she returned to work. Defendant then concludes that its decision to terminate her because she could not obtain such a letter "does not create any inference that Plaintiff was terminated because of a disability." Def.'s Mem.Supp.Mot.Summ.J. at 27.

 Defendant's conclusion is clearly incorrect. Plaintiff provided Defendant with at least one unrestricted work release and attempted to obtain the additional letter that Defendant requested. Defendant then terminated Plaintiff upon learning that she was unable to procure a doctor's assurance that she would never hurt her wrist again. This sequence of events coupled with the lack of an alternative explanation clearly permits the inference that Defendant terminated Plaintiff because it believed she had a wrist condition.

Further, the single case that Defendant cites as support is inapposite. In *Beck v. University of Wisconsin Board of Regents,* the Seventh Circuit upheld a summary judgment ruling for the University of Wisconsin, finding that the university could not be held liable for a failure to make reasonable accommodations for a disabled employee because the employee's qualified work release was ambiguous, the employee would not allow the university to obtain more information from her doctor, and the university had made a good faith effort to accommodate her. *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1133–37 (7th Cir.1996). Unlike *Beck,* the instant case presents an employee who obtained an unrestricted work release and attempted to procure the additional assurance Defendant required. Defendant provides no evidence indicating that Plaintiff was unwilling to permit it to obtain more information from her doctor. Accordingly, *Beck* provides no support for Defendant's claim.

### III. *CONCLUSION*

Defendant's motion for summary judgment (doc. 48) is **DENIED.**

SO ORDERED.