JOHN STREET LEASEHOLD LLC,
Plaintiff–Counter–Defendant–
Appellant,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Defendant–
Counter–Claimant–Appellee.

No. 99–7242.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 26, 1999.

Decided: Nov. 10, 1999.

Robert J. Ward, Mayer, Brown & Platt, N.Y., N.Y., for Plaintiff–Counter–Defendant–Appellant.

Paul Rubin, Herrick, Feinstein, LLP, N.Y., N.Y., Ann S. Duross, Assistant General Counsel, FDIC, Colleen J. Boles, Senior Counsel, FDIC, Kathryn R. Norcross, of Counsel, FDIC, Washington, D.C., for Defendant–Counter–Claimant–Appellee.

Before: FEINBERG, OAKES, and POOLER, Circuit Judges.

PER CURIAM.

John Street Leasehold LLC ("John Street") seeks to avoid the consequences of a mortgage agreement it signed in December, 1972. In exchange for a nonrecourse loan in excess of 20 million dollars, John Street agreed to repay the principal plus interest by January 1, 2006. John Street also agreed that after December 30, 1992, the lender (a consortium of banks) could provide 6 months notice and require repayment of the entire loan (the "call provision"). As 1992 approached, John Street realized that the threat posed by the call provision undercut its ability to secure additional needed financing. John Street attempted to negotiate a waiver of the call provision with the FDIC,[1] and apparently thought it had entered a binding oral agreement in telephone conversations with the FDIC's representative Alfredo Santos. John Street allegedly agreed to continue making its scheduled payments and to invest money in maintaining and improving the building in exchange for a waiver of the call provision.[2] Upon learning that the FDIC—through its loan servicer, Capital Management Resources ("CMR")—did not acknowledge the existence of an oral agreement, John Street withheld its regularly scheduled payments. The FDIC declared John Street in default and foreclosed.

In 1995, John Street filed a state court action for breach of contract, fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing. Defendant removed to federal court, and, on December 20, 1996, the district court (John G. Koeltl, *J.*) granted FDIC's motion for summary judgment on all grounds except breach of contract. At the completion of discovery, the FDIC moved for summary judgment on the breach of contract issue, and the district court granted that motion in an order dated July 22, 1998. We affirm for substantially the reasons stated by the district court in its two fine opinions.

## BACKGROUND

John Street's predecessor in interest, 127 John Street Associates, obtained a $20,300,000 nonrecourse loan through the efforts of its nominee, Rednow Realty Corporation. United Mutual Savings Bank—later replaced by American Savings Bank, which, in turn, was replaced by the FDIC—acted as lead bank in a syndicate with at least 15 other banks participating. The banks secured the loan with a Mortgage Extension, Consolidation and Modification Agreement (the "mortgage"). The mortgage provided for acceleration of the loan in the event of default, including failure to pay monthly installments, yearly interest, or nonperformance of other mortgage obligations. The mortgage also allowed the banks to exercise the call provision, on 180 days notice, any time after December 30, 1992. The terms of the mortgage allowed only written modifications signed by both parties. In addition, although the lead bank received some authority to make modifications, it could only do so with the prior agreement of at least ⅔ of the participating banks.

---

1. By the time of the events giving rise to this lawsuit, the FDIC was acting as lead bank.

2. As a bargained-for exchange, it is not disputed that the alleged oral agreement would actually constitute a modification, not a unilateral waiver of the call provision.

Appellant John Street sought a waiver of the call provision, because its mere existence deterred investors. John Street asserts that its fiduciary duty to its owners, pension funds and trusts, precluded John Street from using even its own funds to maintain the building. The FDIC does not dispute that John Street would have been unable to repay the balance due on the loan if the lenders exercised the call provision.

In 1992, John Street began negotiations with American Savings, then the lead bank, before the FDIC took over as receiver when American Savings failed. The FDIC sent a letter on September 22, 1992, regarding the proposed modification stating that any agreement "is contingent upon the execution of formal recordable documents between the Plaintiff and Participant Banks." No agreement was reached that year. Unable to get the FDIC to pay serious attention to the issue of waiver, John Street deliberately defaulted on its monthly mortgage payment in January 1993.

The FDIC's representative Alfredo Santos called Melvyn Kaufman, a John Street principal, to discuss matters. Santos sympathized with John Street's predicament but explained that the FDIC needed the votes of half of the other banks in order to waive the call provision. However, as John Street at all times was aware, although preparation for the vote may have begun, Santos never sent the necessary ballot forms to the participant banks. John Street alleges that Santos and Kaufman came to an oral understanding on April 23, 1993. In that conversation, Santos again promised to send the ballot forms out: "I have in front of me a ballot that is going out on Tuesday."[3] John Street highlights the following exchange:

> FS: What we're trying to do here is ... leverage the situation by saying well, we're giving 127 John Street a release of the call provision. In exchange for that,

how about if they are willing to agree to clean up the asbestos.

> MK: When?
>
> FS: Say a five year term.
>
> MK: Uh, I can't do it in occupied space.
>
> FS: Oh yes sir, yes sir on a program, for example.
>
> MK: On some sort of a program.
>
> FS: That's right sir but then you will have five years to do it in.
>
> MK: Uh ...
>
> FS: Or a reasonable proximity thereof.
>
> MK: That's okay.

A month later, however, Santos informed Kaufman that the FDIC had delegated the John Street loan to a servicer, CMR, and that CMR was handling the loan. Santos explained why he had not yet sent the ballots needed for the syndicated banks to register their approval of the waiver:

> The only thing that has to be done right now is for these people to get the ballots out, first step. The ballots have already been prepared. Legal has approved it. FDIC Liquidator in Charge gave it its blessing and the only reason we didn't want it to send it out in the first place was that it was going to come back into an empty building.

In a May 25, 1993, phone call, Santos stated that he had "papered" the "files with all the necessary memos and documentation" for CMR's use. Appellant highlights Santos' vow: "I made a promise to you and I intend to keep it all the way." Yet the words do not indicate the existence of an enforceable agreement but just the opposite; they signify that the promise (to arrange a waiver of the call provision) has not yet been performed.

In the Spring of 1993, John Street realized that CMR had not sent out the ballots and appeared to have no plans to do so. John Street again stopped making payments on July 1, 1993. CMR wrote John Street to demand payment and to inform John Street that its request for a waiver

---

**3.** Kaufman tape recorded his conversations with Santos.

would be "carefully evaluated." John Street continued to default, negotiations did not resume, the mortgage payments were accelerated, and the property eventually sold at auction.

## ANALYSIS

We review *de novo* the district court's determination that there is no genuine issue of material fact. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994) (citing Fed.R.Civ.P. 56(c)). The court views all evidence in the light most favorable to the nonmoving party. *See Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991). Summary judgment is appropriate only if no rational jury could find for the party opposing the motion. *See Heilweil,* 32 F.3d at 721.

In Part IV, Article 31, the mortgage states, "[n]o change, amendment, modification, cancellation or discharge hereof, or of any part hereof, shall be valid unless in writing and signed by the parties hereto or their respective successors and assigns." New York law enforces such requirements and does not permit oral modification when the original written agreement provides that modifications must be in writing and signed. N.Y. Gen. Oblig. Law § 15–301(1) (West 1999); *see also Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F.2d 516, 521–22 (2d Cir.1990). However, even where it is provided that modifications must be in writing and signed, New York will enforce oral modifications in two circumstances—where there has been (1) partial performance or (2) reliance—but only where the subsequent performance or reliance is "unequivocally referable to the modification." *Towers Charter,* 894 F.2d at 522. John Street claims to have relied on Santos' word, and to have invested substantial sums in maintaining and improving the building, as well as keeping up with the mortgage payments. The FDIC points out that John Street was already obligated to maintain the premises and to make its mortgage payments, so it can hardly claim to have

taken those actions because of the alleged waiver of the call provision. Furthermore, as the district court noted, even the funds John Street claims to have invested in making discretionary long-term capital improvements were not unequivocally referable to the alleged oral agreement; those funds had already been committed.

Drawing every inference in favor of John Street, the taped telephone conversations fail to raise a genuine issue of fact as to whether the parties had agreed to an oral modification or whether the FDIC, on behalf of the consortium of lenders, had agreed to waive the call provision. At the outset of negotiations, before Santos became involved, the FDIC reminded John Street that, per the mortgage agreement, only written modifications would suffice to alter the obligations of the parties. Even assuming that New York law would permit the oral modification alleged in this case, appellant offers no evidence suggesting that Santos had authority—actual or apparent—to bind the FDIC. Santos never suggested that his conversations bound the FDIC, he explained the importance of the ballots, and he never told John Street that the ballots had been sent (much less that the waiver had been officially approved). Santos' evident optimism does not constitute a binding agreement. The allegedly pivotal conversation appellant cites contains some give and take and trails off without a clear resolution. Even if there were an agreement, the district court decided correctly that the alleged oral agreement was too vague to be binding. For example, Santos and Kaufman never clarified the timing and extent of the required asbestos removal, nor did they specify whether the waiver of the call provision would be temporary or permanent.

We have considered appellant's fraud and tort allegations and find them without merit. We affirm the judgment of the district court.