Charla KECK, Plaintiff,

v.

NEW YORK STATE OFFICE OF ALCO-
HOLISM AND SUBSTANCE ABUSE
SERVICES, Defendant.

No. 94–CV–1428 (LEK/RWS).

United States District Court,
N.D. New York.

June 24, 1998.

Linnan, Bacon Law Firm, Albany, NY, for plaintiff, James D. Linnan, of counsel.

Hon. Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for defendant, Judith A. Avent, Asst. Attorney General, of counsel.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Plaintiff is employed by the defendant New York State Office of Alcoholism and Substance Abuse Services ("OASAS"). She alleges that she has suffered discrimination on account of her sensitivity to tobacco smoke and perfume in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Presently before the Court is defendant's motion for summary judgment. In the alternative, defendant moves *in li-*

*mine* for a ruling barring any expert testimony regarding the existence or nature of the condition referred to as Multiple Chemical Sensitivity. For the reasons discussed below, the motion for summary judgment is GRANTED and the *in limine* motion is therefore DENIED as moot.

## I. Background

In 1988, plaintiff Charla Keck ("Keck") was hired by an agency of the State of New York known as the Division of Substance Abuse Services ("DSAS"). Soon thereafter, Keck began experiencing health problems caused by exposure to tobacco smoke and perfume. These problems included soreness in her throat, difficulty breathing, headaches, nausea and the inability to concentrate. In 1989, she sought medical treatment and received a variety of diagnoses including Multiple Chemical Sensitivity, Environment Tobacco Sensitivity and perennial allergic rhinitis. Because of these problems, plaintiff was permitted, as an accommodation, to work at the office only after normal working hours or on weekends (when fragrances would not be a problem). During this time, smoking was prohibited on the floor on which she was working. Initially, plaintiff worked seventy percent of a normal work schedule. At some point, this was increased to eighty percent and remained eighty percent at all times thereafter. Under this arrangement, plaintiff worked in her position as a budget analyst for roughly three and a half years.

Around March of 1994, the DSAS was merged with another agency known as the Division of Alcoholism and Alcohol Abuse ("DAAA") to form the defendant New York State Office of Alcoholism and Substance Abuse Services ("OASAS") and on March 24, 1994, Keck was moved into a new building. There, she was provided with a private office per her request and continued to work after hours. On several occasions shortly after the transition, she smelled smoke which she believed to be coming from a co-worker's office down the hall. On one occasion, she discovered him smoking. She also smelled smoke escaping from the designated smoking room, which was on the same floor as her office.

Officers of the defendant attempted to deal with these problems, using additional measures to prevent smoke escaping from the smoking room, and directing the co-worker not to smoke in his office.

On July 18, 1994, plaintiff left work in response to a memorandum dated July 15, 1994 which stated that the office would have a temporary smoking policy which allowed smoking in private rooms and the designated smoking room on the fourth floor. She did not return to work thereafter. Plaintiff was subsequently offered an office on the fifth floor, which was allegedly smoke free. She rejected the offer having heard that smoking still occurred there under the interim policy and because she would still have to go to the fourth floor to retrieve necessary files. She was offered a position at a smoke-free agency but rejected it because she feared having to work during regular hours which would expose her to fragrances. By letter dated September 26, 1994, plaintiff was informed of a new smoking policy prohibiting smoking in private rooms during regular hours and was subsequently directed to return to work in the day-time. She declined because of her sensitivity to perfume. Keck alleges that on July 17, 1995, she made an attempt to return to work but was directed to leave the premises. Plaintiff has remained on an extended leave of absence without pay.

In sum, it is alleged that plaintiff's sensitivities have two consequences. First, she cannot work during any period of time when persons are allowed to smoke either on her floor or on floors she requires access to in order to perform her duties. Second, she cannot in any case work during regular hours due to the likelihood of exposure to perfumes and fragrances during that period. Thus, to be accommodated, plaintiff must be able to work after regular hours and be assured that no persons will be smoking in her work area. In her amended complaint, she seeks compensatory and punitive damages but not reinstatement.

## II. Discussion

### A. Standard of Proof

Federal Rule of Civil Procedure 56(c) provides in relevant part: "[t]he judgment

sought shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the motion, the court must "resolve all ambiguities and draw all inferences in favor of the non-moving party." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir.1997). However, conclusory allegations by the non-moving party will be insufficient to create a material issue of fact. *Id.* "To defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997). With this standard in mind, the Court turns to the substance of defendant's motion.

*B. Failure to Exhaust Administrative Remedies*

■ Defendant first argues that the Court should grant summary judgment on so much of Keck's claim as relates to her sensitivity to perfume because Keck did not refer to a perfume sensitivity in the charge which she filed with the Equal Employment Opportunity Commission ("EEOC"). It is well-established that a plaintiff must file a charge of discrimination with the EEOC and obtain a right to sue letter from them before proceeding in federal court. *See* 42 U.S.C. § 12117(a) (incorporating the exhaustion requirements of Title VII under 42 U.S.C. § 2000e-5). "A district court only has jurisdiction to hear [ADA] claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing*, 990 F.2d 1397, 1401 (2d Cir.1993). As noted in *Butts,* the "exhaustion requirement is an essential element of Title VII's statutory scheme". *Id.* Its purpose is to "encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Id.*

A review of the EEOC charge reveals that allegations that defendant failed to reasonably accommodate a sensitivity to perfume were not included in the charge. *See* Avent Aff.Exh. EE. Although it does allege generally that Keck suffers from multiple chemical sensitivities, the only discriminatory treatment alleged is in connection with her tobacco smoke sensitivity. The Court must therefore determine whether the failure to accommodate her perfume sensitivity is "reasonably related" to her EEOC charge.

■ It must first be noted that despite the Second Circuit's use of the word "subsequent," it is established that conduct may be "reasonably related" to the allegations of the charge even if it occurred prior to the filing of the charge. *Cable v. New York State Thruway Authority*, 4 F.Supp.2d 120, 126–27 (N.D.N.Y.1998). Specifically, claims are "reasonably related" where (1) they would fall within the scope of the EEOC investigation which reasonably could be expected to grow out of the charge of discrimination; (2) the new claim alleges that the employer is retaliating against plaintiff for filing the original EEOC charge; or (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts,* 990 F.2d at 1402–03.

■ The Court finds that the discrimination claim based on sensitivity to perfume falls within the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of disability discrimination on the basis of smoke sensitivity. Both claims are for disability discrimination and are based on very similar disabilities. *Compare Spurlock v. NYNEX*, 949 F.Supp. 1022, 1030 (W.D.N.Y.1996) (ADA claim unalleged in EEOC charge was not reasonably related to race discrimination claim). More importantly, the claims of discrimination based on her smoke sensitivity and perfume sensitivity are essentially inseparable; they arise out of the same set of actions and decisions involving what accommodations should be provided for plaintiff to enable her to work. Therefore, plaintiff is not barred from alleging discrimination on the basis of sensitivity to perfume.

*C. Failure to Allege an ADA Claim*

■ Defendant also argues that plaintiff has not presented evidence sufficient to establish a *prima facie* case of disability discrimination under the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees ...." 42 U.S.C. § 12112(a). A plaintiff who raises a disability discrimination claim under the ADA bears the initial burden of establishing a *prima facie* case. *See Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996). In order to satisfy this burden, the plaintiff must show: (1) that the employer is subject to the ADA; (2) that plaintiff is an individual with a disability within the meaning of the ADA; (3) that, with or without a reasonable accommodation, she could perform the essential functions of the job; and (4) that the employer had notice of plaintiff's disability and failed to provide such accommodation. *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir.1995). It is not disputed that the defendant is an employer subject to the ADA, but the defendant argues that plaintiff is not disabled within the meaning of the ADA and that she has not offered a reasonable accommodation under which she can perform the essential functions of her job.

*1. Is Plaintiff Disabled Within the Meaning of the ADA?*

The ADA defines "disability" as

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Plaintiff argues that she satisfies all three definitions. However, with regard to the definitions of disability as being "regarded" as having a disability or having a "record" of such a disability, the Court notes that plaintiff must also demonstrate that she was fired because of her disability. *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 149 (2d Cir.1998). Plaintiff has made no showing that she was discriminated against because of how she was regarded or because of her record of disability. Rather, she was not allowed to return to work because of her unwillingness to work under certain conditions. Further, there clearly can be no claim of discrimination based on failure to accommodate a disability where there is no actual disability. Thus, even if plaintiff could establish disability under provisions (B) and (C), she would not establish the basis for an ADA claim. The Court therefore addresses whether she has raised a question of fact as to the first definition of disability, whether Keck has a genuine physical or mental impairment that substantially limits one or more major life activities.

The terms "major life activities" and "substantial limit[ation]" are defined in EEOC regulations. While these regulations are not binding, they provide the Court with guidance and are generally given considerable deference. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir.1998).

The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" is defined as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Regulations also provide the following elaboration:

[t]he following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact resulting from the impairment.

*Id.,* § 1630.2(j)(2). In sum, plaintiff's impairment " 'must be significant and not merely trivial.' " *Reeves,* 140 F.3d at 151 (quoting *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 900 (10th Cir.1997)).

■ Plaintiff alleges that her sensitivities substantially limit her ability to breathe. However, the effect of plaintiff's sensitivities on her breathing is only alleged to be a "tightness in her throat" and thus is not severe. Keck Dep. at 28.[1] In addition, she does not allege specific instances of difficulty breathing outside of the work context, which argues strongly for considering her disability as one limiting the activity of work only. *See Homeyer v. Stanley Tulchin Assoc., Inc.,* 91 F.3d 959, 962 (7th Cir.1996) (to show smoke sensitivity substantially impaired breathing, plaintiff required to show that her ability to breathe, "separate and apart from her ability to work," was impaired). The Court also notes that Keck's sensitivities did not present a substantial obstacle to vigorous physical activity, as plaintiff was able to maintain a practice of regular aerobic exercise and mountain hiking. Evidence that a person regularly participates in recreational activities undermines a claim that their ability to breathe is handicapped. *See Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 723 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995) (citation omitted).[2] Plaintiff has therefore failed as a matter of law to demonstrate that her ability to breathe is substantially impaired under the ADA.

■ Plaintiff alleges that her sensitivity to smoke and perfume also substantially limits her ability to work. To demonstrate that a condition "substantially limits" one's ability to work, a party must demonstrate that they are

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). Similarly, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil,* 32 F.3d at 721. Plaintiff must show that "the impairment ... substantially limit[s her opportunities for] employment generally." *Byrne v. Board of Educ., School of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992). Factors to consider include " 'the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training.' " *Id.* (quoting *Jasany v. U.S. Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985)).

■ The defendant argues that plaintiff has not met the required standard because she has not presented specific evidence of any other job foreclosed by her sensitivities. In *Homeyer, supra,* the plaintiff alleged that her respiratory condition, when aggravated by environmental tobacco smoke ("ETS"), substantially limited her ability to work. The court found that these allegations were sufficient to survive a motion to dismiss since plaintiff "was not required to plead facts or evidence to support her allegations. . . ." *Id.,* 91 F.3d at 961. However, the court also affirmed that at the summary judgment stage, the plaintiff would have to produce affirmative evidence that her condition substantially limited her ability to find work in

---

1. The transcript of Keck's deposition is included in the record as Avent Aff.Exh. B.

2. This case deals with the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–796. However, it is well-established that case law involving

the Rehabilitation Act may be relied upon to interpret equivalent terms in the ADA. *See Castro v. Local 1199,* 964 F.Supp. 719, 724 n. 5 (S.D.N.Y.1997); *Hope v. Cortines,* 872 F.Supp. 14, 21 (E.D.N.Y.1995), *aff'd,* 69 F.3d 687 (1995).

her field generally. *Id.* at 961–962. The court concluded that

> although we suspect it will be very difficult for [the plaintiff] to establish that her major life function of working is substantially limited, we cannot say beyond a doubt that [plaintiff], if given an opportunity to submit evidence, would not be able to support her claim that her ability to find work . . . is substantially limited by her respiratory condition.

*Id.* at 963.

Similarly, in *Gupton v. Com. of Virginia,* 14 F.3d 203 (4th Cir.), *cert. denied, Gupton v. Virginia,* 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994), the court found that plaintiff was not disabled because, "[w]hile [she] did introduce evidence that her allergy to tobacco smoke made her unable to continue in her current position . . . she presented no evidence that her allergy foreclosed her generally from obtaining jobs in her field." 14 F.3d at 205. These cases support the conclusion that the failure to allege specific evidence of the extent to which other jobs are foreclosed by smoke sensitivity is generally fatal at the summary judgment stage.[3]

However, in the current case, plaintiff also alleges that her sensitivity to perfume is a disability. Where "an individual has an allergy to a substance found in most . . . office buildings," that person "would be substantially limited in the ability to perform the broad of jobs in various classes that are conducted in . . . office buildings. . . ." 29 C.F.R. Pt. 1630, Appendix at 1630.2(j). The Court finds that a reasonable trier-of-fact could infer from common experience that plaintiff is likely to be exposed to perfume in most office

jobs that she could obtain. The record also supports the conclusion that exposure to perfume causes symptoms in Keck severe enough to be disabling. *See, e.g.,* Keck Dep. at 28 (alleging that around November of 1988, symptoms in reaction to perfume included nausea, headache, tightness in throat, scratchy throat and inability to concentrate), 32 (alleging that scent of perfume in the work area made plaintiff sufficiently sick that she "didn't know how [she] was going to keep coming to work every day.").[4] Therefore, plaintiff has raised a question of fact as to whether she is substantially limited in her ability to work within the meaning of the ADA.

### 2. Is Plaintiff Qualified Under the ADA?

In addition to establishing that she is disabled, plaintiff must demonstrate that she is otherwise qualified to perform the job in question. *See Borkowski v. Valley Cent. School Dist.,* 63 F.3d 131, 135 (2d Cir.1995). An individual is otherwise qualified for a job if she is able to perform the essential functions of that job with or without a reasonable accommodation. *Id.* Thus, part of plaintiff's burden is to demonstrate that an accommodation exists which (1) will effectively allow her to perform the essential functions of her job[5] and (2) is reasonable. *See id.* at 135–36. Plaintiff bears the burden of proof with regard to the first prong, effectiveness. *Id.* at 137. With regard to the second prong, reasonableness, the allocation of burdens is somewhat more complex. An initial burden of production is placed upon the plaintiff, but this burden is "not a heavy one" and requires only that plaintiff "identif[y] an [effective]

---

3. It is noted that defendant offered plaintiff a position with an agency which was entirely non-smoking. *See* Keck Dep. at 234–35. Thus, the record supports the conclusion that plaintiff's smoking disability did not substantially limit her opportunities to find employment.

4. Defendant asserts that there is no medical evidence supporting the conclusion that plaintiff has an actual allergy and suggest that her symptoms are largely psychosomatic. The question of whether plaintiff has a physical or mental impairment is not one which the Court can decide as a matter of law given the current record. More importantly, even if the Court were to conclude that plaintiff's illness is a mental disor-

der, it is clear that it would still be covered by the ADA as long as it "substantially limited" one or more "major life activities." A "mental impairment" which may constitute a disability is defined in EEOC regulations as, inter alia, "any mental or psychological disorder. . . ." 29 C.F.R. § 1630.2(h)(2). *See Reeves,* 140 F.3d at 150 (finding that Panic Disorder was a "mental impairment").

5. Hereinafter, this Court will for the sake of convenience use the term "effectiveness" to refer to the requirement of showing that the accommodation allows plaintiff to perform the essential functions of the job.

accommodation, the costs of which, facially, do not clearly exceed [the benefits to the plaintiff]." *Id.* at 139. Then, the defendant has the burden of proving with a more "refined" analysis that the costs are in fact disproportionate to the benefits. *Id.* According to the Second Circuit, this burden is essentially identical to the defendant's burden of proving the affirmative defense of "undue burden." *Id.*, 63 F.3d at 138.

Plaintiff asserts that a reasonable and effective accommodation would have been to allow her to work only after regular hours and on weekends and to ban smoking during that period in her "work area." The Court must consider whether this accommodation is effective and whether it is reasonable. If plaintiff has at least raised a question of fact with regard to both considerations, then she has established a *prima facie* case of discrimination.

### 3. Effectiveness

 The defendant argues against the proposed accommodation on the grounds that being required to allow plaintiff to work only after hours, without regular interactive supervision, would not be reasonable. The Court finds it more appropriate to frame the issue as whether plaintiff, working only after regular hours, is performing the essential functions of her job.

While the ADA itself does not define the term "essential functions," EEOC regulations define it as follows:

(n) Essential functions—

(1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.

(2) A job function may be considered essential for any of several reasons, including but not limited to the following:

(i) The function may be essential because the reason the position exists is to perform that function;

(ii) The function may be essential because of the limited number of employees avail-

able among whom the performance of that job function can be distributed; and/or

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n).

The courts have not dealt specifically with the issue of whether work during regular hours is an essential function. However, there is case law on an analogous issue, whether the ability to work at the office is essential. In *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538 (7th Cir.1995), the court considered plaintiff's argument that an employer is required to allow an employee to work at home as a reasonable accommodation and rejected it. The court stated:

> Most jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance.... Generally, therefore, an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home.... No doubt to this as to any generalization about so complex and varied an activity as employment there are exceptions, but it would take a very extraordinary case for the employee

to be able to create a triable issue of the employer's failure to allow the employee to work at home.

*Id.* at 544–45.

This logic applies directly in the current case. Plaintiff's accommodation would also require that she be allowed to work on a solitary, unsupervised basis. It is noted that plaintiff had previously been allowed to work after regular hours for three and a half years. However, the Seventh Circuit held that

> if the employer, because it is a government agency and therefore is not under intense competitive pressure to minimize its labor costs or maximize the value of its output, or for some other reason, bends over backwards to accommodate a disabled worker—goes further than the law requires-by allowing the worker to work at home, it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far—reaching an accommodation. That would hurt rather than help disabled workers.

*Id.,* 44 F.3d at 545. The Court agrees that an organization should not be considered to have waived the right to supervise an employee forever by virtue of having done so in the past. Such a rule would only convince employers never to make such accommodations. Plaintiff does not point to any current incumbents in her position who are allowed to work under an unsupervised arrangement. Moreover, plaintiff was told in a letter dated October 10, 1990 from Peter Pezzolla, her supervisor's supervisor, that her position could not permanently be performed after hours:

> The current arrangements that you have with Ms. Judie Pearlberg will not be considered permanent and DSAS will explore

the appropriateness of other assignments within the agency to be more conducive to working at home. The goal is for you to return to full time employment.

Avent Aff. Exh. H.

Some courts have required a more particularized showing that the actual presence of the plaintiff at the workplace is essential. *See Hernandez v. City of Hartford,* 959 F.Supp. 125, 132 (D.Conn.1997). The Court finds, however, that this standard would also be satisfied. Plaintiff does not refute the affidavit of David Gardam, the Director of Budgeting and Finance, that after the consolidation of the two predecessor agencies, OASAS's work staff was downsized by about forty percent and that, as a result, "it became problematic to have necessary day to day coverage within the budget division and still maintain plaintiff's off hour work schedule." Gardam Aff. ¶ 3.

The accommodation proposed by the plaintiff is therefore insufficient to demonstrate that she is a qualified person for the position because it would not allow the supervision and interaction which her employers have determined is necessary to her position. Because plaintiff has not raised a question of fact with regard to an element of her *prima facie* case, summary judgment on her ADA claim must be granted to the defendant.[6]

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED; and the action is therefore dismissed in its entirety; and it is further

ORDERED that the defendant's motion *in limine* is DENIED as moot; and it is further

---

**6.** Because the issue of effectiveness is decisive, the Court does not determine whether the smoking restrictions plaintiff sought to impose are reasonable. The Court does note that this would appear to be a factual question in light of *Staron v. McDonald's Corp.,* 51 F.3d 353, 357–58 (2d Cir.1995) ("We see no reason why, under the appropriate circumstances, a ban on smoking could not be a reasonable modification."). *But see Vickers v. Veterans Administration,* 549 F.Supp. 85, 89 (W.D.Wash.1982) ("Until and unless Congress enacts a statute banning the smok-

ing of tobacco in government offices ... the desires of those employees who wish to smoke cannot be disregarded"). Defendant suggests that plaintiff's requested accommodation would have been a violation of the collective bargaining rights of the other employees. If that were the case, the accommodation would be *per se* unreasonable. *See Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) (employer had no obligation to violate a collective bargaining agreement to accommodate plaintiff). However, that fact is not clearly established.

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.