**Thomas E. MONROE, Plaintiff,**

v.

**CORTLAND COUNTY, NEW YORK, Defendant.**

**No. 97–CV–687 FJS/GJD.**

United States District Court,
N.D. New York.

Feb. 22, 1999.

Satter & Andrews, Syracuse, New York, for plaintiff.

Hogan & Sarzynski, LLP, Binghamton, New York, for defendant; Edward J. Sarzynski, Richard A. Maroko, Mimi C. Satter, of counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Plaintiff Thomas E. Monroe has been in the employ of Defendant Cortland County since 1982. Since the 1960s he has suffered from anal fissures, which is a chronic condition that can cause pain and rectal bleeding under certain circumstances. The County was unaware of Plaintiff's condition until late 1995, when Plaintiff worked as Recycling Foreman—a newly-created position that Plaintiff filled in 1993. In December 1995, it was discovered that due to Plaintiff's condition, he was unable to operate a skidsteer loader for extended

periods of time on any given day. As a result, the County relieved him of his duties until such time as he could work without restriction. Plaintiff claims that this decision constitutes discrimination on the basis of an actual or a perceived disability. His complaint asserts causes of action against the County under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the New York Human Rights Law.

Presently before the Court are two motions. First is the County's motion for summary judgment on the basis that Plaintiff cannot, as a matter of law, establish a *prima facie* case of disability discrimination. Second is Plaintiff's cross-motion for summary judgment on the issue of liability.

## Discussion

As an initial matter, the Court notes that at the time the County's motion for summary judgment was filed, the County as the moving party was required to prepare a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue, *with specific citations to the record* where such facts are set forth." Local Rule 7.1(f) (1998) (emphasis added).[1] The County's original statement contained no cites to the record. Plaintiff took note of this defect in his brief, and asked the Court to dismiss the motion. The County however, submitted a corrected version when it filed the complete summary judgment packet with the Clerk's office. For this reason, the Court will allow the motion to go forward.

### I. Standard of Review

The standard for summary judgment is well known. Such motion will be granted only if the moving party can show that no genuine issue of material fact exists for trial. *See* Fed.R.Civ.P. 56(c). Since Plaintiff carries the burden of proof in this case, the County can prevail on its motion only

if it can point to an absence of evidence to support an essential element of Plaintiff's claims. *See Consarc v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir. 1993). To defeat the County's motion, Plaintiff in turn must produce evidence in an admissible form to support his claims. *See Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The evidence must be more than colorable, conclusory or speculative. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For his own summary judgment motion to succeed, Plaintiff must show, as a matter of law, that he can establish all elements of his claim by a preponderance of the evidence and no questions of material fact exist for a jury to decide. When considering each motion, all reasonable inferences must be drawn and all ambiguities resolved in favor of the non-moving party. *See Consarc,* 996 F.2d at 572.

### II. Elements of a Disability Discrimination Claim

 To establish a prima *facie case,* Plaintiff must prove: (1) his employer is subject to the ADA and the Rehabilitation Act; (2) he is an individual with a disability; (3) he is otherwise qualified to perform the essential elements of his job with or without reasonable accommodation; and (4) he was subjected to discrimination because of his disability. *See Reeves v. Johnson Controls World Serv.,* 140 F.3d 144, 149-50 (2d Cir.1998) (ADA); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994) (Rehabilitation Act). The County argues primarily that Plaintiff cannot establish he is "disabled" within the meaning of the statutes.

### A. Whether Plaintiff is an individual with a disability

A "disability" is defined under both the ADA and the Rehabilitation Act to include:

1. While this same requirement continues to exist under the Local Rules, the language was

modified somewhat on January 1, 1999 and is now found under Local Rule 7.1(a)(3).

(A) a physical or mental impairment that substantially limits one or more of the major life functions of an individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); 29 U.S.C.A. § 705(20)(B) (West 1999) (formerly 29 U.S.C. § 706(2)(B)). Plaintiff argues that under either subsection (A) or (C), he qualifies as a person with a disability.

### 1. Physical or Mental Impairment that Substantially Limits One or More Major Life Functions

■ The Second Circuit has emulated the three-step approach taken by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), for purposes of determining whether an individual suffers from an impairment that substantially limits major life activities. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998). First to be considered is whether a plaintiff suffers from a physical or mental impairment. *See id.* Second, the court is to identify the activity claimed to be impaired and determine whether it constitutes a "major life activity" under the statutes. *See id.* Finally, the plaintiff must show that his impairment "substantially limits" the major life activity identified in the previous step. *See id.* If a plaintiff fails to satisfy each of these elements, his discrimination claim must be dismissed. *See id.*

### a. Physical or Mental Impairment

As noted earlier, Plaintiff suffers from chronic anal fissures. The County concedes Plaintiff has a physical impairment as defined under the ADA and the Rehabilitation Act. The question then becomes whether that impairment "substantially limits" one or more "major life functions."

### b. Major Life Activities

The Equal Employment Opportunity Commission (EEOC) defines "major life activities" under the ADA to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, reading, learning, and working." 29 C.F.R. § 1630.2(i). The same definition is used in those regulations implementing the Rehabilitation Act. *See* 45 C.F.R. § 84.3(j)(2)(ii). The Appendix to 29 C.F.R., Part 1630 explains that the preceding list is not exhaustive, but also includes standing, reaching and lifting. The Second Circuit has identified sitting, standing and lifting as major life activities. *See Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir.1998).

■ In its original summary judgment papers, the County addressed only the "major life function" of working. Plaintiff responds he is substantially limited not so much in his ability to work, but rather in his ability to walk, stand and lift. Since all of these activities are deemed major life activities, Plaintiff can be considered to have satisfied this element of the inquiry.

■ The County argues that no consideration should be given to the life activities of walking, standing and lifting, because Plaintiff failed to incorporate them into his amended complaint. While true that a read-through of the pleadings gives no indication that any life activity other than working is involved, Plaintiff did include a catch-all sentence alleging that he "suffers from an anal fissure which substantially limits him in one or more of his major life activities." *See* Pl.'s Compl., ¶ 28. Consequently, Plaintiff has not foreclosed the opportunity to enumerate various major life activities in support of his claim.[2]

### c. Substantial Limitation of a Major Life Activity

This step of the inquiry is fact specific and requires an evaluation of Plaintiff's

---

2. Where a problem does seem to arise is with respect to when Plaintiff discovered the need to limit his walking and standing. This issue however, will be addressed in the next section.

particular circumstances. *See Colwell*, 158 F.3d at 643. While the Rehabilitation Act regulations offer no guidance in this matter, *see id.*, the EEOC regulations implementing the ADA define the phrase "substantially limits" as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Plaintiff argues that the latter category applies to him. The regulations provide that when determining whether an individual is substantially limited in an activity, the following factors should be considered:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*Id.* § 1630.2(j)(2).

As noted in the preceding section, Plaintiff claims he is substantially limited in his ability to walk and stand.[3] These activities need to be considered before the Court can address the issue of whether Plaintiff is substantially limited in his ability to work.

*See* 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working."); *see also Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 329 (2d Cir.1998).

### i. Walking and Standing

The evidence put forth by Plaintiff to support his claims consists of his own deposition testimony and affidavits by Dr. Biondi. Plaintiff testified on January 27, 1998 that walking for half an hour and standing for an hour bothers him. *See* Pl.'s Dep. at 47, lines 11–20 (Docket No. 27). He claims to have noticed these problems from about the first day he began working as a Motor Equipment Operator in March 1997. *See id.* at 49, lines 13–22. These limitations are reiterated in the two affidavits Plaintiff submitted to the Court. *See* Pl.'s Aff., Nov. 20, 1998, at ¶¶ 22–23 (Docket No. 33); Pl.'s Aff., Dec. 21, 1998, at ¶¶ 2–3 (Docket No. 43). Dr. Biondi also signed an affidavit explaining that Plaintiff should neither walk for more than 30 minutes nor stand for more than an hour. *See* Dr. Biondi's Aff., Nov. 19, 1998, at ¶ 5 (Docket No. 34).

Before analyzing the merits of this evidence, it is important to note that Plaintiff reported no limitations with respect to walking and standing until *after* he was removed from his job as Recycling Foreman. When Plaintiff experienced rectal bleeding while operating the skidsteer in December 1995, Plaintiff's direct supervi-

---

**3.** Plaintiff concedes that limitations in his ability to lift are too undefined to support his cross-motion for summary judgment. *See* Pl.'s Br. at 13 n. 13. They are also insufficient to raise a genuine issue of material fact sufficient to defeat the County's motion. Discovery is completed in this case, yet the only evidence Plaintiff submits to the Court on this particular issue is his own deposition testimony. *See* Pl.'s Dep. at 49–50. Claims of disability have been rejected for failure to submit any supporting medical evidence. *See Heilweil*, 32 F.3d at 723 ("No medical proof sub-

stantiates plaintiff's assertion. And to defeat a motion for summary judgment, a plaintiff cannot rely on 'conjecture or surmise' . . . ."); *Zuppardo v. Suffolk County Vanderbuilt Museum*, 19 F.Supp.2d 52, 56 (E.D.N.Y.1998) ("Notably absent is a single hospital record, doctor's report, expert deposition testimony, or any medical proof whatsoever."). This lack of evidence demonstrates that no reasonable jury could conclude Plaintiff was disabled in this respect under the federal statutes. *See Zuppardo*, 19 F.Supp.2d at 56.

sor responded in a letter dated January 17, 1996 that Plaintiff should obtain a doctor's statement clarifying his health status. The next day, Plaintiff had an appointment with his treating physician, Dr. Nicholas Biondi, D.O. Dr. Biondi wrote that Plaintiff should not engage in prolonged sitting or driving heavy equipment until further notice. The County subsequently informed Plaintiff by letter dated January 24, 1996, that he was relieved of his duties until such time as he produced a doctor's statement indicating he could perform his job without restriction. On February 1, 1996, Dr. Biondi wrote that Plaintiff could return to work, provided he did not operate the skidsteer. On February 15, 1996, the doctor amended the restriction to state that Plaintiff could operate the skidsteer, but for no more than five percent of his workday.[4] The use of "five percent" derives from the County's New Position Duties Statement, which sets forth estimates as to how much time a Recycling Foreman might spend on certain tasks.

In March 1996, the County personnel officer wrote Dr. Biondi to learn whether any alterations could be made that would enable Plaintiff to perform those tasks in which he was presently limited. Dr. Biondi responded that Plaintiff could return to all of his duties, except he could operate the skidsteer no more than five percent/40 minutes per day. When later asked what could be done with the skidsteer to eliminate Plaintiff's discomfort, the doctor reiterated that only reduced operating times would be of help. In addition to seeing Dr. Biondi, Plaintiff was examined by the County's physician, who confirmed the only solution was to limit Plaintiff's operating time on the skidsteer.

The County thereafter offered Plaintiff a position as a Motor Equipment Operator, which Plaintiff accepted. He began working again in March 1997. Neither Dr.

Biondi nor the County's physician placed any medical restrictions upon Plaintiff at this time. Not until March 1998—one year after Plaintiff began his new job as Motor Equipment Operator—did Dr. Biondi issue a work restriction limiting Plaintiff's time to walk and stand. Even accepting Plaintiff's claim that he told his general foreman about his difficulties when they occurred, the County's first notice of such problems would have been March 1997 at the earliest.

■ Plaintiff asserts that the limitations used to define a disability do not necessarily need to be the limitations that cause the discrimination at issue. He reasons that as long as he can show his anal fissures limit one or more major life activities—regardless as to when those limitations are discovered—he is thereby "disabled." The Court agrees that a "disability" and a "limitation" involve distinct concepts. The Court also agrees that in this Circuit, no causal connection is required to be shown between a particular limitation and an employer's discriminatory response. *See Colwell,* 158 F.3d at 644 n. 1 ("We need not consider whether a plaintiff must show that the discrimination he suffered is motivated in any way by the limitation of the particular life activity."). Nevertheless, Plaintiff cites no case authority approving the use of evidence to show how a major life activity has been impacted *subsequent* to the time when the alleged discrimination has occurred. Most cases never even reach this question because they involve persons who attempt to show how they were limited in certain activities *prior* to an employer's alleged discrimination.

The only case that appears to shed any light on the subject is *Heilweil.* There the Second Circuit held that the plaintiff could not rely upon evidence as to her medical condition two years after she was removed from her job. In that case, the plaintiff

4. In the note, Dr. Biondi miscalculated the five percent to equal 40 minutes a day, when both parties acknowledge the correct calculation is 24 minutes a day. The parties disagree however, as to which number of minutes controls. For purposes of deciding this motion, the parties' disagreement is of no relevance.

tried to use medical reports from 1991 to suggest she suffered from a more serious respiratory disease than the asthma of which her employer was aware in 1989. The Court "[did] not think this later obtained medical information [was] probative on the issue of whether or not [plaintiff] was a handicapped person ... when in June 1989 [the defendant] decided to discharge her." 32 F.3d at 724. The opinion goes on to provide that "an employer is only responsible for employment decisions based on information available to it when it decides." *Id.* at 725.

■ The Court realizes the case at hand is different in that Plaintiff is not using his subsequent walking and standing restrictions as evidence of a new impairment, but rather as evidence that his pre-existing impairment substantially limits major life activities. Yet the logic of *Heilweil* still applies. The Second Circuit was making the point that for purposes of deciding whether discrimination has occurred, the focus is on whether the individual was disabled at the time the adverse action occurred. If an employee does not suffer a substantial limitation in a major life activity at the time he experiences an adverse employment decision, then he is not "disabled" at the pertinent time when the employer authorized such action—even if at that time a condition exists that in the future causes the employee to suffer a disability.

■ As applied to Plaintiff, the key inquiry is whether he was disabled in early 1996 when he was removed from his job as Recycling Foreman. Under the statutory definition of "disability," the question then becomes whether Plaintiff suffered a physical impairment that, *at the time* of his discharge, substantially limited him in one or more major life functions. Just as in *Heilweil,* Plaintiff's evidence of his inability to walk and stand after he began his new job in 1997 is irrelevant to determining whether he was substantially limited in these activities *in early 1996.*

■ In his brief and at oral argument, Plaintiff attempted to show that his difficulties with walking and standing could date back to the time when he worked as Recycling Foreman, but his argument is unpersuasive. Plaintiff primarily relies upon Dr. Biondi's supplemental affidavit, where the doctor states that when the County requested a list of work-restrictions in 1996, the one work-related activity that seemed to aggravate Plaintiff's condition was operation of the skidsteer. Accordingly, the work-restriction was drafted with respect to only that piece of equipment. Yet Dr. Biondi cautions that this "work-restriction should by no means be interpreted as exclusive or encompassing all of [Plaintiff's] limitations at that time." Dr. Biondi's Aff., Dec. 21, 1998, at ¶ 4. This unsubstantiated statement is hardly proof that Plaintiff experienced substantial limitations in walking and standing from 1994–1996 when he worked as the Recycling Foreman. It merely raises—without confirming—the possibility that Plaintiff could not walk or stand much even then. Dr. Biondi never attests to a history of complaints of this nature from Plaintiff over the course of time, nor does he state when he first learned from Plaintiff that extended walking and standing caused discomfort. Sweeping allegations unsupported by admissible proof are insufficient to defeat summary judgment. *See Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 65 (2d Cir.1997).

Moreover, regardless what time frame is considered, Plaintiff's evidence that he is substantially limited in his ability to walk and stand fails to satisfy his burden of proof. First of all, the references to Plaintiff's limitations predominantly are made in the context of his job as a Motor Equipment Operator. The only reference made to limitations outside his employment is a statement in one of Plaintiff's affidavits that his condition interferes with taking walks with his granddaughter. *See* Pl.'s Aff., Dec. 21, 1998, at ¶ 3 (Docket No. 43). This Court has stated that where a plain-

tiff provides evidence of a limitation only in the context of his job, the implication is that working is the only major life activity affected. *See Keck v. New York State Office of Alcoholism and Substance Abuse Servs.*, 10 F.Supp.2d 194, 199 (N.D.N.Y. 1998) ("[Plaintiff] does not allege specific instances of difficulty breathing outside of the work context, which argues strongly for considering her disability as one limiting the activity of work only."). On this basis, the Court could proceed directly to Plaintiff's evidence as it pertains simply to working.

Second of all, the evidence with respect to Plaintiff's restricted walking and standing falls short of making out a *prima facie* case. The Second Circuit in *Colwell* recently reversed a jury verdict in favor of three plaintiffs bringing disability discrimination claims against their employer. The Circuit Court concluded that the employees failed to adduce sufficient evidence to show their impairments were substantial, especially when compared to the ability of the average person to perform those same functions. *See* 158 F.3d at 644. One plaintiff, who claimed to be limited in his abilities to stand, sit, lift, sleep and work, relied only upon his testimony as evidence of his disability. The Court characterized his descriptions as "vague," including his comment that he cannot stand for more than an hour at a time. *See id.* Another plaintiff, who tried to show that he was limited in his ability to stand, sit, lift, bend over or reach up, called his doctor to testify. Among other things, the doctor stated the plaintiff could stand and walk for "maybe half an hour to an hour at a time" and could work an eight-hour day with limitations. *See id.* This testimony was also characterized as "vague." *See id.*

Plaintiff in the case at hand presents evidence of no more value. Beyond his own and Dr. Biondi's description that Plaintiff can walk for only 30 minutes and stand for only 60 minutes at a time, no other proof is submitted to the Court for consideration. While Plaintiff claims to have made available medical reports and notes, none of those materials is submitted either in support of Plaintiff's cross-motion or in defense to the County's motion. Neither do any of Plaintiff's papers make specific mention of them, or indicate the materials are available on request or are anticipated to be presented at trial. At oral argument, when pressed by the Court for proof of Plaintiff's limitations, Plaintiff's counsel repeatedly pointed just to the supplemental affidavits of Plaintiff and Dr. Biondi (the shortcomings of which are identified above). The Court thereby finds that in light of *Colwell*, Plaintiff has proffered insufficient evidence to prove he suffers from a severe impairment, *see* 29 C.F.R. § 1630.2(j)(2), or that he is significantly restricted when compared to the average person, *see id.* § 1630.2(j)(1). The analysis then proceeds to Plaintiff's restrictions with respect to working.

### ii. Working

■ The EEOC regulations contain a special definition for what it means to be substantially limited in one's ability to work. In this context, an impairment is substantially limiting if a person is:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The County points to a lack of evidence to support the proposition that Plaintiff is foreclosed from holding a job within the same class or within the broad range of jobs into which the position of Recycling Foreman would fall. Nor does Plaintiff in any of his papers put forth evidence to suggest he is substantially limited in his ability to work. Rather, Plaintiff's efforts are focused almost solely on showing how he is limited in his ability to walk and stand.

Even taking what evidence is available in the light most favorable to Plaintiff, he would be hard-pressed to show his condition prevents him from holding a job similar in kind to that of Recycling Foreman. As Dr. Biondi's letter of February 15, 1996 indicates, the only restriction placed upon Plaintiff regarding the position of Recycling Foreman was operation of the skidsteer for more than 40 minutes each day. Simply because this restriction prevents Plaintiff from working as a Recycling Foreman, it does not mean he is substantially limited in working at all. *See Heilweil,* 32 F.3d at 723 (reiterating that "a person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working"). Furthermore, this restriction has no bearing upon Plaintiff's abilities to carry out the managerial responsibilities or operate the other heavy equipment that were a part of his duties as Recycling Foreman and form the basis for other jobs. As proof of his capacity to work successfully at a comparable job, Plaintiff continues to be employed as a Motor Equipment Operator with the County, despite his restrictions on walking and standing. Plaintiff's gainful employment in a position similar to that from which he was removed undermines any claim Plaintiff might make that he is substantially limited in his ability to work.

## 2. Perceived as Being Disabled

■ Under the ADA and the Rehabilitation Act, a person is considered to have a disability—even if he has no such disability—as long as he is regarded as having an impairment that substantially limits one or more major life functions. *See* 42 U.S.C. § 12102(2); 29 U.S.C.A § 705(20)(B). The question focuses on the intent of the employer, and Plaintiff bears the burden of showing the County regarded him as being disabled within the meaning of the ADA and the Rehabilitation Act. *See Francis v. City of Meriden,* 129 F.3d 281, 284, 285–86 (2d Cir.1997).

■ The County argues that no evidence exists to suggest that any of Plaintiff's supervisors perceived Plaintiff as being limited in his ability to work, *i.e.,* that Plaintiff was restricted from performing either a class of jobs or a broad range of jobs. The Court agrees, especially considering the County offered Plaintiff a different job in the same field.

Plaintiff contends the County is arguing the issue too narrowly. His brief highlights deposition testimony whereby the County Director of Solid Waste Management acknowledged that in January 1996, he thought Plaintiff was disabled. *See* Mr. Pitman's Aff., at 36–37. Although the Director subsequently submitted an affidavit explaining he did not mean to imply that Plaintiff was limited in his ability to work, Plaintiff believes that questions remain about whether the Director thought Plaintiff was limited in other activities, "most notably, walking, standing or lifting." Pl.'s Mem. of Law in Supp. of Cross–Mot. and in Opp'n to Mot., at 16.

Plaintiff however, submits no proof to support the existence of such factual questions. Nothing in the record presently before the Court suggests the Director perceived Plaintiff to be restricted in any manner other than operating the skidsteer. At his deposition, the Director answered that his impressions about Plaintiff's disability in mid-January 1996 were based on the information provided by Dr. Biondi up to that point. *See* Mr. Pitman's Aff., at 36–37. In January 1996, Dr. Biondi had ordered Plaintiff to refrain from prolonged sitting and the operation of heavy equipment—which restrictions have no connection to walking, standing or lifting. Looking ahead to February 1996, Dr. Biondi's restrictions narrowed, at first prohibiting Plaintiff from operating the skidsteer at all and then allowing him to operate it no more than 40 minutes per day. Dr. Biondi's restrictions regarding walking and standing were ordered only in March 1998, long after the time frame in which the

Director admitted to thinking of Plaintiff as disabled. Nor do we know whether the Director was made aware of these subsequent restrictions, considering Plaintiff then was an employee of the Highway Department—not Solid Waste Management.

In sum, Plaintiff's evidence in support of his claim that he suffers from a disability is insufficient to make out a claim against the County. As such, his motion for summary judgment is denied, the County's motion for summary judgment is granted, and the Court need not consider whether Plaintiff has established the remaining elements of a *prima facie* case.

### III. Plaintiff's Claims Under the New York Human Rights Law

Since Plaintiff's federal causes of action have been dismissed, the Court declines to exercise pendant jurisdiction over Plaintiff's state law claims of discrimination. *See Ryan v. Grae & Rybicki, P.C.*, 1996 WL 680256, at *7 (declining to exercise supplemental jurisdiction over New York Human Rights Law claim after dismissing ADA disability discrimination claim), *aff'd* 135 F.3d 867 (2d Cir.1998).

### Conclusion

After carefully considering the entire file in this matter, the submissions of the parties, the oral arguments of counsel and the applicable law, it is hereby

ORDERED that Defendant Cortland County's motion for summary judgment is GRANTED with respect to Plaintiff's ADA and Rehabilitation Act claims; and it is further

ORDERED that Plaintiff's motion for summary judgment on the issue of liability is DENIED; and it is further

ORDERED that no pendant jurisdiction will be exercised over Plaintiff's state law claims; and it is further

ORDERED that Plaintiff's complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**